16b 15
15ap254

## The Dexter and Limerick Plank Road Company vs. Allen.

In an action brought since the act of March 16, 1850, amending the general plank road act of 1849, was passed, to recover a penalty for making a false representation that the defendant was entitled to exemption from toll, the act of 1849 is to be read and construed as if the 8th subdivision of the 3d section thereof, added by the act of 1850, had always formed a part of the former act.

The act of March 16, 1850, amending the general plank road act of 1849, repealed the exemption from tolls contained in the 36th section of the turnpike act, so far as it was applicable to plank roads.

Repeals by implication are not favored by the courts; but a subsequent statute, repugnant to a prior one, repeals it. And if a subsequent statute be *not* repugnant, in all its provisions, to a prior one, yet if the last was clearly intended to prescribe the only rule that should govern in the case provided for, it repeals the former one.

Where, in an action by a plank road company, to recover a penalty for a false representation as to the defendant's exemption from toll, the defendant asserts in his answer that he was entitled to the exemption; and it is assumed by both parties, and the cause is tried on the theory, that the road was subject to exemption as being constructed over an old highway, it is too late for the defendant to raise the objection, on appeal, that there was no proof that the plank road was so constructed over a former highway.

Where a person, on passing through a toll-gate on a plank road, says that he " is going to mill," this amounts to a declaration that he claims to pass the gate without paying toll, on the ground that he is going to mill; and in an action to recover the penalty for a false representation, the jury will be authorized to understand this to be a representation that the defendant was going to mill " for the purpose of getting his grinding done," and that the mill was the one " where he ordinarily got his grinding done."

If, in such a case, under the pretense of going to mill, a person travels on a plank road in going and returning, two miles and an half beyond the mill, without paying any toll, it is the province of the jury to say whether the representation made was not, though *literally true*, yet *substantially false*.

This was an appeal by the defendant from a judgment of the Jefferson county court. The action was commenced before a justice of the peace. The plaintiff complained that on the 18th day of May, 1850, the defendant falsely represented himself entitled to exemption from toll on the plaintiffs' plank road, and thereby passed their gate without payment of toll; and the plaintiff claimed to recover the toll and the penalty of $10,

under the act of April 6, 1849, as amended March 16, 1850. The defendant denied the complaint, and claimed a right by law to pass without payment of toll.

The facts as they appeared from the justice's return, were, that the defendant, with his son and wife, on the 18th day of May, 1850, passed the toll-gate, and as they passed through, it was said by some one in the wagon that they were going to mill, and on their return when asked about toll, the bags lying in the wagon were pointed to, and the wagon passed through the gate; that a grist was taken to a mill and ground that day; that after the grist was left, the party proceeded to Dexter on the plank road of the plaintiff, a distance of 2 or 3 miles, made a visit, returned, took the grist ground and passed through the gate towards home. The action was tried on the 12th day of June, 1850, before the justice and a jury, who found a verdict against the defendant of $10,11, whereon judgment was rendered by the justice for that sum, less 11 cents remitted, and $2,65 costs. The appellant appealed to the county court of Jefferson county, which court affirmed the judgment; and from the latter judgment the defendant appealed to this court.

*John C. Clarke,* for the appellant.

*J. Moore, Jun.* for the respondent.

*By the Court,* GRIDLEY, J. It cannot be denied that the judgment in this cause presents a very severe application of the provisions of the plank road act under which this suit was brought. It is not, however, in our power to relieve the defendant, unless some principle of law has been violated by the jury; provided there was *any evidence* to establish the facts on which the verdict was founded. Several objections, however, have been urged against the judgment, which depend upon certain alleged errors in law, in the proceedings before the justice, which we will proceed to consider.

1. It is said that a judgment has been rendered against the defendant under the third section of the act of 1849, (*Laws*

Dexter and Limerick Plank Road Co. *v.* Allen.

*of* 1849, *p.* 375,) which prescribes a penalty of ten dollars upon a party, for falsely representing himself entitled to one of the exemptions mentioned in the preceding section of the act; when the exemption in question is not found in the act of 1849, but is given in the act of 1850. The best answer to this objection will be found in a plain statement of the provisions of those acts. By the second section of the act of 1849, persons were exempted from the tolls which were authorized by the act, who were going to and from court as jurors; going to and from religious meetings, &c.; comprising seven different classes of persons who were entitled to pass free of tolls. The third section prescribed a penalty of ten dollars against any person who should falsely represent himself to any toll-gatherer as entitled to any of the said exemptions. By the fourth section of the act of 1850, (*Laws of* 1850, *p.* 80,) the act of 1849 was amended "by adding thereto the following, to be the eighth subdivision of the said section," which is the provision exempting those who are going to or returning from any grist mill or blacksmith's shop where they ordinarily get their grinding or blacksmith work done. The consequence of this amendment is, that after the time when the act of 1850 took effect, the act of 1849 would be read with this eighth subdivision, forming an integral part of section number two, and subject to the penalty imposed by the third section of the same act. So far therefore as this suit is concerned, which was brought for a false representation made after the act of 1850 had become a law, the act of 1849 is to be read and construed as if the eighth subdivision had always formed a part of the act.

2. It is urged that the defendant was exempt from the payment of tolls by the thirty-sixth section of the turnpike act, which was adopted by the act of the 12th of May, 1847, and made applicable to plank roads. But we are of the opinion that the act of 1850 repealed the exemptions contained in the turnpike act so far as it was applicable to plank roads. Both acts affected the same class of persons; but the act of 1850 has peculiar and more stringent provisions than the turnpike act. The 36th section of the turnpike act before alluded to, exempts "all persons going to and from a grist mill for the grinding of grain for family use." This

was probably broad enough to protect the defendant. But the eighth subdivision of section two of the act of 1849, inserted by way of amendment, (see Laws of 1850, p. 80,) introduces several important limitations of the right of exemption. It provides that to exempt persons going to, and returning from a grist mill, it must be the mill where they ordinarily get their grinding done; the exemption extends to one gate only; the gate must be within five miles of the residence of the person claiming the exemption; he must be going to the mill for the *express purpose* of getting his grist ground—and such exemption is made to apply only to a plank road, or such part of a plank road as was constructed on an old highway, not theretofore a turnpike. Now, it may be conceded that repeals by implication are not favored by the courts, but a subsequent statute repugnant to a *prior one*, repeals it; and it is laid down in *Davis* v. *Fairbanks*, (3 *How. U. S. Rep.* 636,) that if a subsequent statute be *not* repugnant in all its provisions to a prior one, yet, if the latter statute was clearly intended to prescribe the only rule that should govern in the case provided for, it repeals the prior one. Under this rule the 36th section of the turnpike act, so far as it applies to plank roads is repealed. No man can doubt that it was the intention of the legislature to prescribe certain conditions and limitations to the right of persons going to and returning from mill, where exemption should be claimed on that ground, from plank road companies. (*See also* 3 *Alabama Rep.* 626; 5 *Hill*, 221.)

3. The appellant insists that inasmuch as the exemption only existed in relation to a plank road constructed over an old highway, and as there was no proof that this was such a road, there could be no false representation that would subject him to a penalty. We are of opinion that, whether this position be sound, or not, it cannot aid the appellant here. The answer of the defendant asserted that he was entitled to the exemption; and this point is now put forth for the first time. Had it been stated on the trial the plaintiff might have given proof of the fact. It was assumed by both parties, and the cause was tried on the theory, that the road was subject to exemption; and it is therefore too late to raise that objection.

Dexter and Limerick Plank Road Co. *v.* Allen.

4. We come now to the question whether there was any evidence to warrant a verdict for the plaintiff. We think that the proof of the *representation* was sufficient. It amounted to a declaration that the appellant claimed to pass the gate without paying toll, on the ground that he was going to mill. He pointed to his bags and said " he was going to mill." He must be presumed to know the law, and the circumstances which entitled him to exemption. And the jury were authorized to understand this to be a representation that he was going to mill "*for the purpose of getting his grinding done,*" and that the mill was the one "*where he ordinarily got his grinding done.*" I do not regard this last qualification as very material. He was accustomed to get his grinding done, generally, at Limerick, but had he gone to Brownville, where he most frequently carried his grain to be ground, it is admitted he would have passed through this gate. This circumstance, therefore, could make no difference with the plaintiff. If he passed the gate " for the *express purpose of getting his grist ground,*" it was not material whether he got it ground at one place or the other. The material question is, whether he passed the gate for the "*express purpose*" of getting his grist ground. In point of fact he did get several bushels of wheat ground on that day. But he also went with his wife to Dexter, a mile and a fourth beyond the mill, and made a visit, and when he returned he brought home three bushels and a half of peas, with his flour. The evidence renders it probable that he did not intend to get the peas, when he left home ; but he doubtless intended to make a visit at Shelly's with his wife, as well as to get his grist ground. *That* is proved by the fact that he and his wife actually went from the mill to Shelly's, and remained there several hours. Why else did he and his wife leave home at all ? It is not proved that their assistance was necessary in addition to the son, to take the grist to mill. Again, the wife of the defendant was the aunt of Mrs. Shelly, and the families were intimate with each other. If, under the pretense of going to mill, the defendant and his wife traveled on the plank road, in going and returning, two miles and a half beyond the mill, without paying any compensation for such

Dexter and Limerick Plank Road Co. *v.* Allen.

travel, it was clearly the province of the jury to say whether the representation of the defendant was not, though *literally true,* yet *substantially false.* The defendant had actually traveled two miles and a half on the road, without paying any compensation therefor, under the pretense that his whole travel had been confined to going to and returning from mill. The defendant was only authorized to pass the gate "*for the express purpose*" of going to mill; and the jury found that he left home *with the intent* to make a visit at Shelly's; that the going to mill was only *incidental,* and the visit the *principal* object of the excursion. The jury may not have believed the declaration of the defendant's wife, in the morning, that the family was out of flour, as sworn to by the son. They may have believed, from the evidence, that the defendant went to the mill to have a pretext for passing the gate, but mainly to have a visit, with his wife, at Shelly's. In other words, that he did not go to the mill " for the express purpose of getting his grinding done." If he did not in fact go to the mill to get his grinding done, and he falsely represented that he did go, for that express purpose, (which we have already seen was the substance of his representations,) then he was rightly convicted. We do not say that we should have found as the jury did, but we say that there was evidence of such a character that we are not at liberty to supervise and reverse that finding. We do not mean to say that a man may not do other incidental business when he goes to mill, without forfeiting his exemption; but when he travels two miles and a half beyond the mill, on other business, he certainly incurs the risk of a verdict that he did not pass the gate for the express purpose of getting his grinding done. We must therefore affirm the judgment.

Judgment affirmed.

[Oneida General Term, January 5, 1852. *Gridley, Pratt, W. F. Allen* and *Hubbard,* Justices.]